# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | | |
|---|---|---|
| CLOVER INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-142 |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER</u>

Defendants have filed a Motion to Dismiss or Transfer. Doc. 22. Although Plaintiff Clover Insurance Company has responded, its allegations confirm that its venue allegations rest solely on the premise that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Georgia. 42 U.S.C. § 1391(e)(1)(B); *see* Doc. 22 at 5. But the only events giving rise to Clover's claim consist of Defendants' calculation of its 2026 Medicare Advantage Star Rating. Clover's failure to allege or argue that this action occurred in this District is a fatal flaw in its argument. Therefore, this Court should dismiss or transfer this case.

## ARGUMENT

I.    **The collection of data in this District is tangential to the dispute in litigation and is insufficient to establish venue in this District.**

When considering venue, "[o]nly the events that directly give rise to a claim are relevant." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). Here, Clover alleges that its 2026 Star Ratings incorporate data collected about

Clover's members in the Southern District of Georgia, as well as data about members in every other judicial district in which Clover offers plans under the contract at issue. *See* Doc. 1, ¶ 3. But the Complaint challenges only Defendants' *calculation* of its 2026 Star Rating, not their data collection. *See* Doc. 1 at ¶¶ 238, 245, 252, 257, 265, 273 (each count urging this Court to "set aside Clover's unlawful 2026 Star Rating and order CMS to recalculate Clover's Star Rating"); *id.* at 66 (seeking declaration that calculation was unlawful). There is no dispute that Defendants' calculation occurred in D.C. or Maryland where Defendants are located. Doc. 1, ¶¶ 45–48. Likewise, decisions about what data to incorporate into the ratings were also made in D.C. or Maryland. *See A.J. Taft Coal v. Barnhart*, 291 F. Supp. 2d 1290, 1308 (N.D. Ala. 2003) (venue appropriate in district that decision was "made in and issued from").[1]

In its Response, Clover tries to recast the claims in the Complaint, arguing that the mere collection of data about members in this District was an event giving rise to its claim. Doc. 22 at 9. This is mistaken. Clover would have no cause of action if Defendants had collected the same data but taken no action with it. *See, e.g.*, Doc. 1 at ¶¶ 221, 225. If CMS had done what Clover requested during the "plan preview" periods, *see id.* at ¶¶ 213-19, its Star Rating for the affected contract would have been four stars, and it would not be in this or any court. Clover's new assertion that the collection of data was an independent wrong must be rejected. Clover is bound by its

---

[1] Clover argues that *A.J. Taft Coal* involved a motion to transfer, not a motion to dismiss for improper venue. Doc. 22 at 12 n.1. That is a distinction without a difference. The *Taft* court was required to determine that venue was proper in the transferee district before engaging in a balancing test to decide whether to transfer. The *Taft* court's consideration of the "substantial part" test as it applied to the District of Maryland did not incorporate any of the Section 1404(a) transfer factors. *See Taft*, 291 F. Supp. at 1308–09.

Complaint, *see Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."), which clearly challenges the *use* of that data in its Star Ratings calculation.

In determining proper venue, courts consider "as relevant only those acts and omissions that have a close nexus to the wrong." *Jenkins Brick*, 321 F.3d at 1372. An example of an act with "an insubstantial connection with the kinds of events giving rise to a claim" is one that is "not itself wrongful." *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995); *see also Jenkins Brick*, 321 F.3d at 1372 (approving *Woodke*'s interpretation of the venue statute). An act that is not allegedly wrongful and is not legally necessary to a plaintiff's claim is not relevant to the venue analysis. *See Russo v. Raimondo*, No. 24-0186, 2024 WL 4571431, at *3 (S.D. Ala. Oct. 24, 2024). In a breach of contract case, courts will consider events relating to "the existence of a contract and the terms of a contract" as part of the venue analysis. *See id.* (discussing *Jenkins Brick*). But courts will not consider where a "*factual* predicate" that is not a "*legal* predicate" took place. *Id.* (emphasis in original, discussing *Woodke*).

Clover cannot demonstrate that the mere collection of data in this District is a legal predicate to its challenge to the allegedly improper calculation of its 2026 Star Rating. Clover quotes language from *Russo* stating that events that "necessary to support" a claim are relevant to venue, Doc. 22 at 9, but it does not apply that language to the facts here. The collection of data is not "necessary to support" Clover's wrongful calculation claim in the way that the existence and terms of a contract are

3

necessary to support a breach of contract claim. *See Russo*, 2024 WL 4571431, at \*3 (distinguishing factual from legal predicates). The wrong Clover alleges—incorporation into its Star Rating calculation types of data that Congress forbade the agency to consider—would still exist if CMS had, for example, used publicly available data that it was statutorily forbidden from using. *Cf. Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019) (venue proper in case alleging improper solitary confinement where plaintiffs were confined because they "would have no claims to bring suit but for their solitary confinement in their respective correctional facilities").

Clover relies heavily on *Russo v. Raimondo*, but that case is readily distinguishable. In *Russo*, the plaintiff challenged the government's final rule which approved an amendment to a Fishery Management Plan that had originally been approved by a regional Fishery Management Council at its meeting in the Southern District of Alabama. *Russo*, 2024 WL 4571431, at \*1. "The Council's approval . . . is the precise reason the Final Rule is (allegedly) unlawful; had [the agency] promulgated the Final Rule on its own rather than in response to the Council's action, the plaintiff's claim could not have arisen." *Id.* at \*3 (footnote omitted). The Complaint also alleged that the Fishery Management Council's members were inappropriately appointed and the structure of the Council was itself unconstitutional. *Id.* at \*2; \*4 ("The nexus is even closer, because the Council is alleged to be an unconstitutionally structured body"). There is no analogue here. The *collection* of data about members in this District has no connection to Clover's

allegation that Defendants' *calculation* of its 2026 Star Rating was illegal. Unlike *Russo*, there is no allegation here that the collection of data itself was unlawful. Clover's claim could have arisen even if Defendants collected no data at all in this District.

*Friends of the Everglades v. Noem*, the only other in-circuit case Clover cites in the data collection portion of its Opposition, is "not the usual [National Environmental Policy Act] case" because of its focus on the defendants' alleged omissions. *Friends of the Everglades*, 796 F. Supp. 3d 1234, 1265 (S.D. Fla. 2025).[2] Clover's theory does not depend on any alleged omissions by the Defendants here. The *Everglades* district court noted that "courts generally focus on where the decision-making process occurred to determine where claims arose." *Id.* (cleaned up). The court found that the federal defendants made and continued to make "decisions relating to the setup of the camp and its ongoing operations" in the Southern District of Florida. *Id.* at 1266. Not so here—the Complaint does not allege that any defendant made any decision related to Clover's Star Ratings in this District.

The "events or omissions" giving rise to Clover's claim involve only the calculation of its 2026 Star Rating, which occurred only in D.C. and Maryland. Therefore, venue is not proper here.

---

[2] Plaintiff also cites *Nayi v. Noem*, No. 25-cv-2024, -- F. Supp. 3d --, 2025 WL 2604602 (N.D. Ill. Sept. 9, 2025), in which the district court denied the government's venue motion in a footnote without citing any caselaw. As a result, it has no precedential and highly limited persuasive value. The case is nonetheless distinguishable; the *Nayi* complaint alleged that the government instructed plaintiffs to appear at a specific facility within the relevant judicial district and plaintiffs complied. *Nayi*, 2025 WL 2604602, at *3 n.2. Here, no analogous instruction exists—*i.e.*, there is no instruction from the government that Clover take a specific action within this District.

**II.    Clover's alleged reputational injury in this District is irrelevant to the venue analysis.**

As Defendants have shown, in the venue statute, Congress "'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Jenkins Brick*, 321 F.3d at 1371–72 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). Plaintiffs' principal response is to analogize this Administrative Procedure Act ("APA") matter to a libel and defamation suit. *See* Doc. 22 at 11–12 (citing *Bell v. Rosen*, No. 14-126, 2015 WL 5595806 (S.D. Ga. Sept. 22, 2015) (Wood, J.)). The analogy fails.

The APA's waiver of sovereign immunity applies to actions "seeking relief other than money damages." 5 U.S.C. § 702. Construing this provision, the Supreme Court held that "an action at law for damages" is "intended to provide a victim with monetary compensation for an injury to his person, property, or *reputation*." *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (emphasis added). Clover thus lacks a cause of action under the APA to remedy its alleged reputational harm.[3]

Clover asserts that *Bell* is similar to this case. Doc. 22 at 12. But there is a dispositive difference. The statute providing the cause of action in *Bell* involved publication of a statement "tending to injure the reputation of the person." *Bell*, 2015 WL 5595806, at *4. Further, "the publication of the libelous or slanderous statement [was] essential to recovery," and the allegedly defamatory statement was published

---

[3] *Corner Post v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024), is not to the contrary. That a plaintiff "cannot sue under the APA unless she is injured in fact by agency action," 603 U.S. at 808 n.1 (cleaned up), does not imply that every injury creates an APA cause of action.

in the district in which the case was filed. *Id.* In short, venue was proper in *Bell* because the defendant's action in the Southern District of Georgia was part of the plaintiff's theory of recovery.

Not so here. Whatever reputational injury Clover has experienced from its star rating may not be remedied under the APA. It has no basis to challenge alleged reputational harm because the APA bars actions "seeking monetary compensation for an injury to . . . reputation."[4] *See Bowen*, 487 U.S. at 893.

By contrast, Clover has alleged that, if its Star Rating were increased, it would become eligible for $120 million in Quality Bonus Payments. Doc. 1, ¶¶ 8, 43, 228. This is a straightforward alleged financial injury, and the relief Clover seeks (recalculation of its Star Rating) is not a request for monetary compensation, even though it would lead to an increased Quality Bonus Payment for the affected contract. Clover's arguments about harms arising from the allegedly lost payments being felt in the Southern District of Gorgia are speculative future harms irrelevant to the venue analysis. *See* Doc. 21 at 5–6. Indeed, it does not appear to disagree that it is relying on alleged future harms, arguing that without the payments it "reduce or cease its operations within this District." Doc. 22 at 11.

Clover's cited cases do not stand for the proposition that allegations of future harm affecting an entity in a judicial district are sufficient for venue in that district. In *Everglades*, the district court acknowledged that "the locus of possible

---

[4] Clover's Complaint recognizes this; it does not seek monetary damages barred by the APA. *See generally* Prayer for Relief, Doc. 1 at 66. It is unclear why Clover believes that a non-redressable alleged harm should be relevant to this Court's venue analysis.

environmental harms within this district" was "not a dispositive consideration on its own." 796 F. Supp. 3d at 1264, 1265. In *American Association of Colleges for Teacher Education v. McMahon*, the allegations of future harm were rooted in the plaintiffs' pleading that many of its members "applied for, received, and utilized grants in Maryland." *Am. Ass'n of Colls. For Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 846–47 (D. Md. 2025); *see* Doc. 22 at 13.[5] The alleged future harms were thus connected to the termination of grants that defendants had previously directed towards the district. *Cf. Russo*, 2024 WL 4571431, at \*3 (existence and terms of contract among "relevant events" for venue in breach of contract case). In another out-of-circuit case relied upon by plaintiffs, the court's venue analysis relied heavily on the fact that "the claims arise directly from the Court's previous decisions," and "the unique procedural history of this case" was integral to the analysis. *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-76, 2021 WL 718857, at \*5 (D. Mont. Feb. 24, 2021). The Montana district court also found venue proper based on the residency of the plaintiffs, *id.* at \*4–5, meaning that the case also fails to support the proposition that bare allegations that harms may be felt in a judicial district is sufficient for venue.

Clover's attempt to distinguish *Rogers v. Civil Air Patrol* likewise misses the mark. *See* Doc. 22 at 16 n.2. It is simply incorrect that the only alleged connection to the Middle District of Alabama was the plaintiff's "*speculation* that he would be forced

---

[5] The discussion of venue under Section 1391(e)(1)(B) is also dicta, because the court held that venue was proper under Section 1391(e)(1)(C) based on the plaintiff's residency in the District of Maryland. *Am. Ass'n of Colleges for Tchr. Educ.*, 770 F. Supp. 3d at 846.

to perform work there at some point in the future." *Id.* (emphasis in original). The court in *Rogers* found venue improper despite plaintiff's submission of evidence that the national executive committee of one defendant met in Montgomery, Alabama, to choose new members for its Board of Governors. *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1339 (M.D. Ala. 2001). The court held that "these events certainly may be relevant to Plaintiff's claim," but "they do not meet the substantiality component of" the federal officer venue statute. *Id.* The *Rogers* court held that venue would be proper either where the defendants resided or in the District of Columbia, where the allegedly unconstitutional legislation was drafted, enacted, and signed. *Id.* Clover suggests that this Court should discount *Rogers* because a subsequent district court found it "tricky to dissect." Doc. 22 at 14 n.2. But that district court went on to explain, "[t]his is not to say that *Rogers* was wrongly decided on its facts." *Russo*, 2024 WL 4571431, at *4 n.12.

Clover concludes that "[i]t would be curious, to say the least, if imminent and certain future harms sufficed to give rise to Article III standing, but not venue." Doc. 22 at 14. But whether a plaintiff has Article III standing and whether its action was filed in the correct district according to the terms of the venue statute are two separate inquiries. If they were the same, there would be no need for the venue statute at all—an entity with standing could elect to bring an action in any district where it maintains some presence, however minimal and unrelated to its claims, on the theory that an injury harms it wherever it might be found. *Jenkins Brick* shows that this cannot be the law; after all, the plaintiff in that matter was an Alabama-

based company, 321 F.3d at 1368, that surely could have pled that it felt the effects of the alleged breach of contract where it was based.[6] *Jenkins Brick* stands for the proposition that "only those acts and omissions that have a close nexus to the wrong" are relevant to determining the proper venue under the statute. 321 F.3d at 1372. Clover cannot show that any acts and omissions having a close nexus to the putative wrong—the alleged calculation of its 2026 Star Rating using prohibited data—occurred in the Southern District of Georgia.

Venue is therefore improper, and this case should be dismissed or transferred.

## III. The parties do not dispute that the District of Columbia is an appropriate venue.

Although Defendants sought dismissal, the Motion to Dismiss sought transfer to an appropriate district as an alternative relief. Doc. 21 at 6. The Motion remained agnostic about which district would be most appropriate. *Id.* In its Response, however, Clover asks that if this Court determines to transfer the case, that the transfer be to the United States District Court for the District of Columbia. Doc. 22 at 18. Defendants agree that venue would be proper in the District of Columbia and have no objection to such a transfer should this Court determine not to dismiss this action.

### CONCLUSION

Clover bears the burden to establish in the Complaint—and not in new allegations presented in response to a motion to dismiss—that venue is proper in this

---

[6] Unlike the federal officer venue statute, the general venue statute at 28 U.S.C. § 1391(b) does not permit provide for proper venue in the federal judicial district where the plaintiff resides.

District. Clover has failed to meet that burden. None of the events alleged to have been the cause of Clover's injury occurred in the Southern District of Georgia. Therefore, this Court should dismiss this action or transfer it to the District of Columbia.

Respectfully submitted this 31st day of December, 2025,

MARGARET E. HEAP
UNITED STATES ATTORNEY

*/s/ O. Woelke Leithart*
Idaho Bar No. 9257
Assistant United States Attorney
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia  31412
Telephone:  (912) 652-4422
E-mail: Woelke.Leithart@usdoj.gov